UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

|  |  |  |
|---|---|---|
| DAVID ROBERTS, | ) ) | |
| Plaintiff, | ) ) | 2:08-CV-00236-PMP-LRL |
| v. | ) ) | |
| ALBERTSON'S LLC and SAMSUNG | ) ) | ORDER |
| AMERICA, INC., et al., | ) ) | |
| Defendants. | ) ) | |

Presently before this Court is Defendants Albertson's LLC and Samsung America, Inc.'s Motion for Summary Judgment (Doc. #54), filed on October 14, 2009. Plaintiff David Roberts filed a Response (Doc. #71) on November 24, 2009. Plaintiff also filed Objections to Evidence Proffered in Defendants' Motion (Doc. #74) on November 24, 2009. Defendants filed a Reply (Doc. #75) on December 4, 2009.

**I. BACKGROUND**

In or around 2005, Defendant Albertson's LLC ("Albertson's") purchased blood monitors from Defendant Samsung America, Inc. ("Samsung"). (Ex. 1 to Pl.'s Opp'n (Doc. #72) at 9-10.) Albertson's sold the blood pressure monitors under Albertson's brand name, Equaline. (Id.) The Equaline monitor's instructions state that "All Equaline monitors . . . are within accuracy limits prescribed by the American National standard for electronic or automated sphygmomanometers." (Id. at 19.) Samsung's representative testified that Samsung received consumer complaints regarding inaccurate readings from the Equaline monitor, but that often the inaccurate readings were due to consumer misuse and failure to

1  follow the directions closely.  (Id. at 28.)

2        After suffering a stroke on December 20, 2005, Plaintiff David Roberts

3  ("Roberts") purchased an Equaline blood pressure monitor from a Save-On drugstore.[1]

4  (Defs.' Mot. Summ. J. ["Defs.' Mot."] (Doc. #54), Ex. D at 157; Ex. G at ¶ 6; Pl.'s Opp'n

5  (Doc. #71), Decl. of David Roberts at ¶ 1.)  When Roberts purchased the blood pressure

6  monitor, he also purchased a large size cuff.  (Defs.' Mot., Ex. G at ¶ 1.)  Roberts read the

7  outside labeling of the blood pressure monitor's box and the instructions.  (Id., Ex. D at

8  200.)  The only instruction Roberts recalls reading was that the monitor had to be

9  calibrated.  (Id.)  Roberts used the monitor on a regular basis in conjunction with Clonidine,

10 blood pressure medicine prescribed to him by the hospital after his first stroke.  (Id., Ex. D

11 at 175; Ex. G at ¶ 1.)  Roberts checked his blood pressure with the monitor sometimes three

12 times per day, but never less than once every other day.  (Id., Ex. G at ¶ 1.)

13       On January 4, 2006, Roberts had an appointment with his primary care physician,

14 Dr. Gary Grossman ("Grossman").  (Id., Ex. E at 19.)  At the appointment, the nurse took a

15 manual reading of Roberts' blood pressure and then used Roberts' electronic blood pressure

16 monitoring device to check his blood pressure.  (Id., Ex. D at 203.)  The manual reading

17 showed Roberts' blood pressure at 114/72, which Dr. Grossman considered "adequate

18 blood pressure control."  (Id., Ex. E at 20-21.)  According to the readings, however, there

19 was about a ten point difference between the manual and electronic blood pressure devices.

20 (Id., Ex. D at 203.)

21       In the middle of January 2006, Roberts began taking fish oil pills because he

22 read on the internet that they were known to reduce blood pressure.  (Defs.' Mot., Ex. D at

23 182-83.)  Roberts did not consult with any physician regarding his choice to pursue a

24 ///

25

26      [1]  Save-On is owned by Albertson's.

homeopathic naturopathic regimen.  (Id. at 181.)  Roberts avers he called Grossman[2] and
informed him his blood pressure was below normal.  (Defs.' Mot., Ex. D at 184.)  During
the call, Roberts also informed Grossman he was taking fish oil pills.  (Defs.' Mot., Ex. D at
185.)  Roberts avers Grossman advised him to cut his Clonidine intake in half, from one
milligram three times a day to one half milligram three times a day.  (Defs.' Mot., Ex. D at
178, 186.)

Thereafter, Roberts began taking a second homeopathic supplement said to lower
blood pressure, Co-Q10.  (Defs.' Mot., Ex. D at 184-85.)  Roberts' blood pressure again
dropped below normal and as a result, towards the end of February 2006, Roberts decided
to stop taking Clonidine.  (Defs.' Mot., Ex. D at 185.)  Roberts did not seek an opinion from
Grossman or any other medical professional regarding whether such an action would be
advisable.  (Id. at 186.)  On June 26, 2006, Roberts suffered a second, more severe stroke.
(Id. at 169.)  During the entire period in question, Roberts smoked approximately two cigars
a week and drank one or two beers approximately three to four times a week.  (Id. at 220-
21).  Additionally, Roberts has smoked cigars since the 1970's.  (Id. at 220.)

In Grossman's deposition, he testified that Roberts' stroke was caused by high
blood pressure.  (Defs.' Mot., Ex. E at 31-32.)  However, Grossman testified he had no
opinions regarding the efficacy of the blood pressure monitor or whether the allegedly
defective monitor was the cause of Roberts' stroke.  (Id. at 24, see also 33-34 (testifying
that, in addition to relying on the blood pressure monitor's readings, Roberts also should
have followed up with Grossman and taken his medicine to avoid a stroke).)  After Roberts'
second stroke, Dr. Pham, one of the doctors following Roberts' health and rehabilitation,
explained to Roberts that considering the amount of damage done, Roberts' blood pressure
would have had to be high for a long period of time prior to Roberts' second stroke.  (Pl.'s

[2]  In Grossman's deposition, he testifies that he believes one of his medical assistants
handled Roberts' phone call.  (Defs.' Mot., Ex. E at 40-41.)

1    Opp'n, Decl. of David Roberts at ¶ 5 & Ex. 3.)

2            On December 20, 2007, Roberts filed a complaint in the Eighth Judicial District

3    Court of Nevada alleging the blood pressure monitor Roberts purchased at Albertson's was

4    defective and/or negligently manufactured causing Roberts medical injuries.  (Notice of

5    Removal (Doc. #1), Ex. A ("Compl.") at ¶ 14.)  Specifically, Roberts alleges the blood

6    pressure monitor gave him false, low blood pressure readings that caused him to forego

7    taking medicine he was prescribed, thus causing him to have a stroke.  (See Compl.)

8    Albertson's subsequently removed the case to this Court.  (Notice of Removal.)  On June

9    13, 2008, Roberts filed an Amended Complaint adding Samsung as a Defendant.  (Am.

10   Compl. (Doc. #16) at ¶ 15.)

11           Defendants now move for summary judgment arguing Roberts cannot raise an

12   issue of material fact to establish that the blood pressure monitor had a defect which made it

13   unreasonably dangerous because Roberts lacks expert testimony establishing Defendants'

14   product caused Roberts' damages.  In response, Roberts contends he does not need an

15   expert to establish the blood pressure monitor was defective and there are numerous

16   questions of material fact establishing Roberts' products liability claim.

17   **II.  LEGAL STANDARD**

18           Summary judgment is appropriate "if the pleadings, the discovery and disclosure

19   materials on file, and any affidavits show that there is no genuine issue as to any material

20   fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

21   Initially, the moving party bears the burden of proving there is no genuine issue of material

22   fact.  Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002).  If the moving party

23   meets its burden, the burden shifts to the nonmoving party to "set forth specific facts that

24   show a genuine issue for trial."  Id. (internal quotation omitted).  A moving party without

25   the ultimate burden of persuasion at trial "must either produce evidence negating an

26   essential element of the nonmoving party's claim or defense or show that the nonmoving

4

1   party does not have enough evidence of an essential element to carry its ultimate burden of

2   persuasion at trial."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099,

3   1102 (9th Cir. 2000).  The Court views all evidence in the light most favorable to the

4   non-moving party.  Leisek, 278 F.3d at 898.

5   **III.  DISCUSSION**

6        Defendants argue Roberts has not presented any expert testimony to establish to

7   a reasonable degree of medical certainty that the allegedly defective product caused

8   Roberts' injury.  Defendants contend Roberts stopped taking Clonidine on his own volition,

9   not because of Defendants' product.  Additionally, Defendants contend Roberts' possible

10  misuse of the large cuff, his prior history of high blood pressure, and his regular drinking

11  and smoking habits may have caused the stroke.

12       Roberts responds that there are sufficient questions of material fact because the

13  manufacturer represented that the product was accurate and reliable and failed to warn that

14  using the cuff incorrectly would result in false readings.  Roberts argues the product is

15  defective because it did not perform as a reasonable person expected it to perform, and an

16  expert is not necessary to testify to that, as the issue of consumer expectation is one for the

17  trier of fact.  Additionally, Roberts contends Grossman testified that Roberts' high blood

18  pressure caused his second stroke.  Finally, Roberts argues Defendants have provided no

19  evidence to support their assertion that other factors may have caused his stroke.

20       A federal court sitting in diversity must apply the substantive law of the forum

21  state in which it resides.  Vacation Village, Inc. v. Clark County, Nev., 497 F.3d 902, 913

22  (9th Cir. 2007).  The parties agree that Nevada law governs in this case.  In strict product

23  liability cases, the plaintiff carries both the burden of production and the burden of

24  persuasion.  Rivera v. Philip Morris, Inc., 209 P.3d 271, 275 (Nev. 2009).

25  ///

26       To establish either a strict products liability or failure to warn claim, a plaintiff

must show "(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury." Id. (quotation omitted).  To prevail on a negligence theory, the plaintiff also must establish causation.  See Perez v. Las Vegas Med. Ctr., 805 P.2d 589, 590-91 (Nev. 1991).

To prove causation, a plaintiff must produce expert medical testimony opining to a reasonable degree of medical certainty that the allegedly defective product caused the plaintiff's injury.  Neal-Lomax v. Las Vegas Metro. Police Dep't, 574 F. Supp. 2d 1193, 1199-1200 (D. Nev. 2008) (applying Nevada law).  Expert medical testimony regarding causation must be stated to a reasonable degree of medical probability because "if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment."  Moriscato v. Sav-On Drug Stores, Inc., 111 P.3d 1112, 1116 (Nev. 2005) (quotation omitted).  Thus, "[a] possibility that the product caused the injury is insufficient."  Neal-Lomax, 574 F. Supp. 2d at 1198.

Viewing the evidence in the light most favorable to Roberts, Roberts has failed to present evidence raising a genuine question of material fact as to whether Defendants' product caused Roberts' stroke.  Roberts has presented no expert testimony establishing the allegedly defective blood pressure monitor caused his stroke or that the blood pressure monitor was defective.  Additionally, even assuming Defendants' failed to include sufficient warnings regarding how to use the product properly, Roberts has not presented evidence to establish the alleged failure to warn caused his stroke.  Defendants have raised a variety of other factors that may have caused Roberts' stroke, including prior history of high blood pressure, alcohol use, smoking, improper use of the large cuff, and Roberts' choice to stop taking Clonidine without his doctor's approval.  Roberts bears the burden of establishing the other factors did not cause or contribute to his stroke.  As such, Roberts

1  must provide expert testimony that, to a reasonable degree of medical certainty, the blood

2  pressure monitor caused his stroke.  Roberts has failed to provide such evidence.

3  Accordingly, Defendants' Motion for Summary Judgment is granted.

4  **IV.  CONCLUSION**

5          IT IS THEREFORE ORDERED that Defendants Albertson's and Samsung's

6  Motion for Summary Judgment (Doc. #54) is hereby GRANTED.

7          IT IS FURTHER ORDERED that Judgment is hereby entered in favor of

8  Defendants Albertson's and Samsung and against Plaintiff David Roberts.

9

10  DATED:  June 22, 2010.

11

12  _____

13  PHILIP M. PRO
    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26